IN THE

# United States District Court for the District of Maine

| | |
|---|---|
| ANDREW U. D. STRAW,  ) | Case#: 1:25-cv-00325-JAW |
| *Plaintiff,* ) | |
| ) | Hon. John A. Woodcock, Jr. |
| v.  ) | Judge Presiding |
| ) | Hon. |
| UNIVERSITY OF MAINE,  ) | Magistrate Judge |
| *Defendant.* ) | |
| ) | JURY TRIAL NOT DEMANDED |

## AFFIDAVIT

COMES NOW, *pro se Plaintiff* ANDREW U. D. STRAW (hereinafter "Plaintiff"), individually, hereby state as follows:

## FACTS

1. The facts in a case like this evolve and I wish to provide some additional evidence in support of my COMPLAINT (Dkt. 1) and my APPLICATION FOR *IFP*, which can only granted after a review under 28 U.S.C. § 1915(e).

2. On the same day this lawsuit was filed in federal court in Maine, the university registrar's student records office informed me that my Medical Withdrawal was approved and that it would take 10-15 days to process this fact.

3. This screenshot of the email is from the Registrar's office:

4. **EXHIBIT 1:**

5. 

6. I have received texts from the University announcing my grades, with dates.

7. **EXHIBIT 2** shows the F and L grades as well as the A from 2024:



8.

9. Note that on **June 18, 2025**, **my DIS 520 F grade was changed to an L**, also a failing grade. L means the student stopped participating without withdrawing.

10. [https://www.maine.edu/early-college/grades/#:~:text=F/NP:%20Failure.,Computed%20into%20GPA%20as%200.0](https://www.maine.edu/early-college/grades/#:~:text=F/NP:%20Failure.,Computed%20into%20GPA%20as%200.0).

3

11. It should be noted that Associate Dean Delacorte did approve my withdrawal on **June 6, 2025**. EXHIBIT 3:

12. 

13. The DIS 520 F grade which was issued on May 6, 2025, remained in place until June 18, 2025, but Medical Withdrawal had been approved by the Graduate School on **June 6**. This meant 12 days of an **F grade** in my record, humiliating me, until **June 18**, when the L was placed even when the University knew I did have **Medical Withdrawal** approved by the Graduate School and working its way through the system by that time. L was not justified on these facts. My grades should have been wiped, no grade assigned.

14. I should not have had an F in any case because this was about not participating after my schizophrenia became worse. **Dkt. 1-3**.

15. Assigning an L on *the same day* (June 18, 2025) the Registrar's office sent notice that my Medical Withdrawal was approved was another insult that humiliated me and simply showed the University's professor, who assigned me an A in a course in 2024, was bent on shoving that failing grade in my face. A Disability Studies professor should be far more understanding and sympathetic than to rush to issue an F to a mentally ill student who asked ADA accommodations, then only gave the L grade when the Registrar had approved Medical Withdrawal that will completely wipe those courses away.

16. There is a hostility here in the instructors that should be considered ==disability animus toward my mental illness==.

17. No university policy required those instructors to issue such grades *or any grade* under conditions of Medical Withdrawal being sought and then approved.

18. The Graduate School said on ==May 19, 2025==, that my Medical Withdrawal was approved and this was based on my doctor's certification of schizophrenia being worse and my needing to avoid the stress of university coursework.

19. The failing grades issued on ==May 6== and ==May 17== (EXHIBIT 2, supra) should have been removed on ==May 19, 2025==, once my application for Medical Withdrawal was being considered, especially since it was approved.

20. Professor DePoy in DIS 520 seemed much more sympathetic in her email to me. She offered the L grade and assistance with Medical Withdrawal on <mark>May 10, 2025</mark>, but then issued an F (EXHIBIT 2, *supra*) on <mark>May 17</mark>, 2025, without telling me beforehand that she would do that. **EXHIBIT 4:**



21.

22. Changing the grade from F to L on **June 18, 2025**, the same day this lawsuit was issued its case number, makes the failure less obvious in my record, it has the same impact on my GPA and **still means failure**.

23. My second count in my complaint mentioned that Instructor Canniff first said nice things about me in an email dated May 12, after issuing an L failing grade

6

on May 7, and then attacked my use of CC in separate emails. These are the 2 emails:

24. **EXHIBIT 5**:



25.

26. I appreciated those kind words about my civil rights work and I hoped that an A could have been granted given my decades of experience as a disabled lawyer who won settlements through mediation and wanted court reform.

7

27. Instead of granting my request for an A based on submissions in PAX 591 and past human and civil rights work I have done (e.g.: http://all.andrewstraw.com), Instructor Canniff then attacked the way I use email functions (CC) to communicate. <mark>May 12</mark>, 2025, the same day:

28. **EXHIBIT 6**:

29. 

30. I also suggested to the University of Maine that I could be granted an honorary Ph.D. in the two disciplines (DIS -- Disability Studies & PAX -- Peace Studies) based on my decades of experience as a disability rights lawyer and advocate for legal system change to benefit disabled people everywhere:

8

<http://all.andrewstraw.com> & <http://www.andrewstraw.com> & <http://ban.andrewstraw.com> & <http://profile.andrewstraw.com>

31. While not rejected outright, this honorary Ph.D. request has remained unactioned even until today.

32. It was far more preferable to me to have an honorary degree from the University of Maine with me in a position of being ==appreciated and respected== for my human rights work rather than being ==humiliated with failing grades and bureaucratic delays== while I suffered with those failing grades on my record, not removed.

33. Canniff said that he was explaining an etiquette rule, but on the face of the email did not provide that rule.

34. I, on the other hand, am guided by my First Amendment rights, and that includes being able to **copy email content** to anyone I choose without any state actor like a university telling me I can't. That's free speech.

35. There was no privacy issue because any privacy issue needed to be asserted by me. I asserted no such thing.

36. I need to be open with my mental illness because I advocate for other people who have mental illness as a civil rights leader and whistleblower. I rarely assert my privacy for this reason. The Illinois Court of Appeals called me a "public figure who works on disability rights issues." *Straw v. Streamwood Chamber, et. al.*, 2015 IL App (1st) 14-3094-U, 2015 WL 5725222:

37. https://www.illinoiscourts.gov/Resources/64fcb39e-0c9a-4941-bf18-df6491c857f3/1143094_R23.pdf (at ***2, ¶ 5**)

38. "* * * public figure who works on disability rights issues * * *" is what I am and it is an adjudicated fact.

39. Public figures don't severely limit their use of CC. In fact, I have found that I make liberal use of that function when I complain about civil rights violations.

40. I should have ==heightened legal protections== as someone who sticks his neck out to make disability rights reform arguments. The ABA featured me for the month of January 2014 as its "Spotlight" advocate with disabilities but when the chips were down, the ABA was not behind me. *Straw v. LinkedIn*, 5:22-cv-7718-EJD (N.D. Cal. 2023), **Dkt. 22-39**:

41. https://www.courtlistener.com/docket/66619947/22/39/straw-v-linkedin-corp/

42. *Straw v. ABA*, 18-1795 (7th Cir. 2018) (SETTLED June 2018); *Straw v. ABA*, 17-P-25 (City of Chicago Human Rel. Comm.) (SETTLED June 2018)

43. Unfortunately, in many places, the opposite of honor and respect has happened. My work was wrongly attacked as frivolous and I have been called irrational by judges who discriminate based on disability. Being called irrational in a profession that depends on reason is a severe public insult by an abuser in public office who wishes to oppress civil rights that are disfavored, like disability rights. This phenomenon has been studied:

44. https://www.ucpress.edu/books/the-public-insult-playbook

45. I have certainly experienced *personally* the kinds of official insults that Professor Ruth Colker discusses in the context of disability rights.

46. I have discussed publicly how my disabilities are from the crimes of others, both uncompensated and with no apologies when both are due: http://crime.andrewstraw.com & http://disability.andrewstraw.com

47. I have explained to the federal government how oppressing me after my public disability rights advocacy is a violation of my religious freedoms as a follower of Jesus Christ, who made healing disabled people the central type of miracle he performed to show his divine nature. *See,* **June 18**, 2025, Email **EXHIBIT A** to all members of the Religious Liberty Commission of the White House, **attached**.

48. It is eerie how **Jesus** focused on **disabilities/illnesses and overcoming a wrongful death** when these are the harms the Camp LeJeune Justice Act seeks to compensate, and my family and I were victims. *Straw v. U.S.*, 7:23-cv-162-BO-BM (E.D.N.C.) (*IFP* granted at **Dkt. 82**; Short Form Complaint at **Dkt. 55**):

49. https://www.courtlistener.com/docket/66839685/straw-v-united-states/

50. https://www.courtlistener.com/docket/67936108/5/straw-v-united-states/

51. I told the U.S. Supreme Court about the lower court dishonesty and discrimination but **no assistance was provided** even when Indiana failed to respond to the shocking facts I revealed:

52. https://www.supremecourt.gov/DocketPDF/17/17-8005/37965/20180307105844473_00000007.pdf

53. **INDIANA SUPREME COURT RESPONSE WAIVER BY COUNSEL:**

54. https://www.supremecourt.gov/DocketPDF/17/17-8005/42075/20180403125725368_SCOUT%20Waiver%2017-8005.pdf

55. My bad experiences with federal courts led me to draft a list of principles that I would implement if I were the Chief Justice of the United States. http://chief.andrewstraw.com

56. When I copy emails to the ADA coordinator office or higher officials in the university, it is because I am not satisfied with how lower-level employees are acting. I have a right to do that and no policy or etiquette rule can say otherwise. I want the president and the chancellor of the University to know how their employees are acting. They *should* know so that they can implement changes in policy as needed and give guidance to university employees.

57. This "etiquette rule" being imposed in a threatening manner as my "advisor" is (because of his official advisor role) a policy of the Graduate School and the PAX program, and the University is accountable for it under 42 U.S.C. § 1983. This is why it is my Count II.

58. **EXHIBIT B** (attached) is my **June 19, 2025,** Grade Report, generated by the University of Maine Classic Student Portal. It now shows **two "L" grades**, which are still failing grades, and the GPA calculation shows this. I went from **4.0** to **1.333**, which a move from **A to D+** as an average.

59. The D+ average is extremely humiliating to me and the University still imposes it on me by putting that in my records. Even with this lawsuit open

and the university aware of it because I told the General Counsel of the University, <mark>the failing grades are still there</mark>.

60. This is like if in the *Barnes* v. *Gorman* case, the police were keeping the urine on the guy and not letting him clean it off.

61. Getting a D+ GPA in my graduate program is to me like splashing urine on me. It feels even worse than that. It is like putting a port in my skull and dumping urine on my amygdala, which regulates emotions. I am so very offended and I want everyone to know it.

62. There is no undue burden in <mark>not issuing grades</mark>.

63. There is no undue burden in <mark>removing grades</mark> after the Graduate School Associate Dean approves of a Medical Withdrawal.

64. There is no undue burden in <mark>promptly processing a Medical Withdrawal</mark> rather than making it take months.

65. There is no undue burden in <mark>remaining silent</mark> when a student uses CC in making complaints and requests for accommodation under the ADA.

66. In short, <mark>avoiding my humiliation</mark> is not an undue burden. It was easy to avoid humiliating me. It took **right attitudes** and **right actions and omissions** (*mens bona* and *actus bona*) that the ADA, Titles II & V, impose as duties.

67. All the University and its employees needed to do was take a moment to imagine how all this seems to me as a disability rights leader who was under stress with mental illness with a doctor saying <mark>stop doing things that stress you, like university coursework</mark>. Dkt. 1-3

68. The fact that university coursework was stressful is an indictment of how university courses are conducted, in itself, inflexibly and in a way that a person with **broad perspectives** is punished, and that's one trait that a schizophrenic person tends to have. It may help to show how the main character with schizophrenia was treated in *A Beautiful Mind*. I like skipping ahead in the movie to the Disney ending:

69. https://www.youtube.com/watch?v=U68B0MW4GIA

70. Humiliating a "public figure who does disability rights work" in the ways I have described should result in the same sort and level of ADA Title II public entity humiliation compensation as was found in *Barnes v. Gorman*, 536 U.S. 181 (2002).

71. With federal lawsuits pending that I am pursuing given I am a federal lawyer admitted to the Fourth Circuit U.S. Court of Appeals, everyone should be careful not to obstruct or harass me in any way that might affect my federal court work. 18 U.S.C. § 1503(a). Oppressing my First Amendment rights is equally dangerous and to be avoided. 18 U.S.C. § 242.

72. Having a federal court protect my rights, my emotions, my dignity, something new to me, would be to me very much like winning a Nobel Prize after everything I have experienced thus far. http://ca7.andrewstraw.com & http://mitigation.andrewstraw.com

WHEREFORE, I so depose these facts and opinions in support of my COMPLAINT and *IFP* review under 28 U.S.C. § 1915(e).

I, Andrew U. D. Straw, verify that the above factual contentions and statements are true and correct to the best of my knowledge, information, and belief, on penalty of perjury.  Signed: June 19, 2025.

Respectfully,

s/ ANDREW U. D. STRAW
9169 W. State ST, STE 690
Garden City, ID 83714-1733
Mobile Phone: (847) 807-5237
andrew@andrewstraw.com

### CERTIFICATE OF SERVICE

I, Andrew U. D. Straw, certify that on June 19, 2025, I sent this **COMPLAINT** with **EXHIBITS**. Included herewith are a **COVERSHEET** and **APPLICATION FOR** *IFP* **STATUS** and **ENOTICE, MJ CONSENT**, via email to the Clerk of Court. I sent a copy via email to generalcounsel@maine.edu, the Office of General Counsel at University of Maine.

Respectfully submitted,

s/ ANDREW U. D. STRAW
*Pro Se Plaintiff*
9169 W. State ST, STE 690
Garden City, ID 83714-1733
Mobile Phone: (847) 807-5237
andrew@andrewstraw.com

## EXHIBIT LIST (ATTACHED EXHIBITS)

- **EXHIBIT A** – EMAIL to White House Religious Liberty Commission, 6/18/2025

- **EXHIBIT B** – Failing L grades and 1.333 GPA calculation in Andrew U. D. Straw's University of Maine record, 6/19/2025

- **EXHIBIT C** – 2024-2025 Financial Aid Activity, University of Maine Account for Andrew U. D. Straw, Generated 6/19/2025