## FALSELY OMITTED MITIGATING FACTORS IN ANDREW U. D. STRAW'S FALSE DISCIPLINARY CASE

Computer programmers have a concept that applies outside of computers. It is called GIGO, or Garbage In Garbage Out. The Indiana Supreme Court suspension of its former employee was conducted in such a fashion. It started with Andrew Straw making an ADA complaint to the Indiana Supreme Court clerk of court, who referred it to the Court's ADA coordinator. The information to be processed should have been Andrew Straw's complaints, informed by his direct experience working for the Indiana Supreme Court.



Straw's ADA petition/complaints, <u>Straw v. LinkedIn</u>, **Dkt. 22-5**:

https://www.courtlistener.com/docket/66619947/22/5/straw-v-linkedin-corp/

The direct retaliation that even mentioned this ADA complaint can be found in the next <u>Straw v. LinkedIn</u> exhibit, at **Dkt. 22-6**:

https://www.courtlistener.com/docket/66619947/22/6/straw-v-linkedin-corp/

That ADA coordinator was under the control of the Chief Justice of Indiana, who is in charge of all the Supreme Court employees and is responsible for them as the top manager of the judicial branch.

### BACKGROUND FACTS BEFORE ADA COORDINATOR ATTACK

1. Straw was a former Indiana Supreme Court employee with ADA disability complaints that he called a "petition" to invoke the First Amendment in August 2014.

2. Straw was severely physically disabled driving to the Indiana Supreme Court to work on 2/22/2001, hit head on by a reckless driver.

3. Straw was disabled by Camp LeJeune toxins where he was born and exposed for 19 months, *in utero* and as an infant. 1968-1970

4. Straw was disabled by 9/11 toxic dust in NYC, where he was exposed for 5 days to those airborne toxins in early October 2001, while taking time off work from the Indiana Supreme Court.

5. Straw only received 20% of the value of the car accident injuries due to the Indiana laws that let a poor person drive with only $100,000 in insurance. Straw lost $400,000 in injury damage and the Indiana Supreme Court did not even offer to top it up. Justice Frank Sullivan was kind enough to write with sympathy for the severe injuries and to welcome Straw back to work in July 2001:



STATEHOUSE - ROOM 321
INDIANAPOLIS, IN 46204

May 29, 2001

Dear Andy,

I am embarassed to have been so long delayed in writing following your terrible auto accident. You certainly have been in my thoughts and prayers and I have tried to follow your recovery progress through Kurt's reports.

You may know that I was in Goshen some months back and several people asked about you.

JTAC continues to make progress with much work yet to come. We look forward to your return.

Again, best wishes for a complete recovery.

Sincerely,

Frank Sullivan

6. Neither the Chief Justice nor the State Court Administrator wrote any letter of sympathy at all. Instead, 1 year later (July 2002), they made excuses to fire Straw.

7. Straw made numerous ADA complaints about businesses in Illinois near Chicago not having handicap spaces and when they did, plowed snow into them to keep non-disabled spots clear. Straw was compensated in one case with the help of the Illinois Attorney General: *Illinois v. Reposteria*, 2022-CH-01627 (Cook Co. Cir. Ct.)

8. Kane County, Illinois, paid Andrew Straw $6,000 for piling snow into one of its handicap parking spaces to make room in the non-handicapped spaces. *Andrew Straw v. Village of Streamwood, et. al.*, 17-1867 (7th Cir. 2018).

9. Straw opposed his own political party for not making its HQ in South Bend accessible to people in wheelchairs and with mobility impairments. Mayor Pete Buttigieg bought a ramp with his campaign donations to try to address Straw's concerns in December 2011.

10. Straw founded Disability Party, which has grown to thousands of followers across the USA and other nations. February 5, 2013.

11. The ABA featured Straw as a political advocate for people with disabilities. Straw was the "SPOTLIGHT" Disabled Lawyer for January 2014 on the ABA national website. Straw v. LinkedIn, **Dkt. 22-39**.

12.     In a trial case commenced in 2013 but ended in 2015 on appeal, the Illinois Court of Appeals described Straw as, <mark>"a public figure who works on disability rights."</mark> (page 2, paragraph 5) https://www.illinoiscourts.gov/Resources/64fcb39e-0c9a-4941-bf18-df6491c857f3/1143094_R23.pdf

13.     Straw challenged the ABA to include disability in its mandatory annual law school reports, Form 509, when race and gender have been reported in admissions for decades. 2014 https://www.courtlistener.com/docket/4262146/straw-v-american-bar-association-section-of-legal-education-and-admission/

14.     NB: the motion to dismiss was granted but it was granted based on standing and was without prejudice. Dkt. 65.

15.     Straw said in 2014 that the ADA should prevent state courts from infringing on the parenting time rights of a disabled father. The National Council on Disability agreed with this position in its huge Rocking the Cradle Report issued in 2012. https://www.ncd.gov/report/rocking-the-cradle-ensuring-the-rights-of-parents-with-disabilities-and-their-children/

16.     Interestingly, the disabled parent on whose behalf Straw sued in federal court was then **given the parenting time he requested** that Straw wanted for him, so that client was not disadvantaged after all. Straw brought a bright light to what was happening in state court and it made a difference. Straw's insurance smoothed over any ongoing issues in the matter.

17.    Straw said that it is not malpractice to not file a federal lawsuit for a client after he said in his retainer agreement that he would not do so, only to seek a negotiated settlement. Straw's former client admitted that she never gave Straw instructions to file a federal lawsuit in writing. She just assumed that Straw would do so without any proof that she told him otherwise and there was evidence in the record that Straw said he would not file any lawsuit in the matter. Straw v. LinkedIn, **Dkt.** 22-16, **pages 136-137**. Lawyers, in other words, cannot be punished for not filing lawsuits they never agreed to file. Straw has said repeatedly that lawyers are not allowed, ethically, to file lawsuits without the express prior agreement to do so from the client, and that was missing here. There was no evidence that Ms. Sconiers ever gave explicit written directions to file a lawsuit. There was only the retainer agreement to which the client agreed that said he would not file any lawsuit. She complained that Straw preferred written communications instead of phone calls, but **a lawyer can ask a client to communicate in writing**. Look what kind of mess happens when a client assumes things that are not in writing. Straw said he would try to achieve a negotiated settlement and did ask—he did exactly what he said he would do. Straw said he would help her find a trial attorney if the client needed it if the negotiations failed. The Indiana trial court invented a contract to file a lawsuit where there was no evidence of that and actually evidence only to the contrary in writing.

18.     This Sconiers EEOC matter was a classic case of going beyond the "four corners" of an agreement to add things that the two parties did not agree to. If an attorney says they were not directed to file a lawsuit, ethics demands that the attorney not file one. No attorney is allowed to just go around filing federal lawsuits for people without explicit PRIOR instruction to do so in writing. Straw was punished for acting ethically. He could have been punished even more, with disbarment, if he filed a lawsuit *without* his client's written permission. A dishonest client can say anything. If Straw filed a lawsuit for her without written instructions, she could turn around and sue for doing that without her permission. Damned if you do, damned if you don't. That's why Straw wanted the **communications on important matters to always be in writing**. It's a precaution that every lawyer should prefer. Sconiers had NO EVIDENCE in writing that Straw was going to file any lawsuit for her. That obligation was always on her but she wanted to get money, anywhere she could, and Straw, being a responsible attorney, had insurance. That was the reason for this whole thing. Bilking Straw's insurance with a meritless case based on Sconiers' words adding to the Sconiers-Straw contract that said the opposite in writing. There was no consideration provided for this new contractual term. Straw was in fact paid nothing at all from meeting Sconiers to the end of the attorney-client relationship. All Straw had as a prospective "peppercorn" for consideration was a possible settlement and when that failed, there was no more consideration for any new obligation beyond that. When Straw

informed Sconiers that the Library said she was never touched sexually and there would be no settlement, Sconiers did not tell Straw to file a lawsuit for her. She has no evidence of doing so. The negotiation failed well before the 90-day letter of right to sue deadline, so she had  time to act. **Sconiers appeared to drop the matter** and Straw had no obligation to pick up the ball and run with it without a **contract obliging him to do so**, and **there was none**.

19.    Straw in the Kloecker/Locke Lord matter said that it was illegal for a law firm representing a **state court defamation defendant newspaper** to demand access to a disabled lawyer's Medicare claims on threat of Medicare imposing $1,000 per day penalties for not agreeing. This when Medicare agreed with Straw, not the lawyer, and said Straw would never get those fines and he should NOT provide that access to the lawyer. This was fundamentally on principle about Medicare privacy in the face of a defamation client newspaper wanting access to it. No person in their right mind lets a newspaper that defamed them allegedly rummage through Medicare claims for mental illness. **Straw said no and sued to protect that privacy**, both for himself and to set a precedent so other *defamation defendants* do not try the same thing later. Straw believes the wrong outcome should prompt Congress to act and create an actionable right to protect Medicare claims privacy. Straw's legal and court reform ideas are here: http://chief.andrewstraw.com    http://all.andrewstraw.com

Straw's profile: http://profile.andrewstraw.com

8 – Updated: June 22, 2025 – CV: www.andrewstraw.com

## DISCIPLINE FACTS, INCLUDING LACK OF MITIGATING FACTS

A. The ADA coordinator was under the control of the Chief Justice of Indiana and hired under that authority by a prior Chief Justice before Loretta H. Rush became Chief Justice of Indiana in **August 2014**. Brenda F. Rodeheffer was a legacy officer of a prior judicial "administration."

B. The disciplinary complaint was filed on **9/3/2014**, less than a month after Straw's petition, and it mentioned Straw's ADA complaints explicitly. Straw v. LinkedIn, **Dkt.** 22-6.

C. The disciplinary complaint invoked the disabled attorney ban by saying Straw's mental illnesses made him file frivolous lawsuits (that were still open!) and suggested his ADA petition was meritless while mentioning Straw's past employment.

D. The complainant did not just file the complaint. **She also sent it to opposing counsel** in one of the cases she was complaining about. Straw believes that was obstruction so the federal court would come to the same conclusions that Rodeheffer wanted. Straw v. LinkedIn, **Dkt.** 22-8.

E. IADC sent a letter asking Straw to respond. Straw v. LinkedIn, **Dkt.** 22-6. **1/5/2015**

F. Straw responded immediately, denying. Straw v. LinkedIn, **Dkt.** 22-9. **1/7/2015**.

G. The IADC had **1 year** from the date of the **1/5/2015** IADC letter to file a verified complaint. Ind. Adm. & Disc., Rule 23, **Section 10(h)**.

H. When 1/5/2016 rolled around, no verified complaint was filed. None was filed after that date on 1/6, 1/7, 1/8/ 1/9, or 1/10.

I. In the absence of a timely verified complaint, ==Section 10(h)== states that the complaint is ==dismissed automatically by rule==.

J. IADC filed its verified complaint on ==1/11/2016==, even though it was not allowed to do that under Section 10(h). <u>Straw v. LinkedIn</u>, **Dkt.** <u>22-10</u>.

K. Straw filed a strong rejection of the allegations in the verified complaint. He also filed an affidavit to explain the facts under oath from his view. <u>Straw v. LinkedIn</u>, **Dkts.** <u>22-12</u> & <u>22-13</u>.

L. The ==IADC officers are all under the supervision of the Chief Justice of Indiana==, for whose court ==Straw worked== and Straw was complaining about that same former employer and its disability access and accommodation problems.

M. Despite reasons to dismiss summarily, Chief Justice Loretta H. Rush appointed a hearing officer to consider the verified complaint and gather evidence and make recommendations.

N. The person she appointed was James R. Ahler, who was seeking appointment to the Indiana Supreme Court for a vacancy.

O. Straw went to one hearing with Officer Ahler.

P. Straw claims that the morning hearing required him to drive from Goshen for over an hour each direction and Straw nearly fell asleep while driving and drove onto the side of the road several times.

Q. Straw said to the hearing officer that his facts, provided in the affidavit and response to the verified complaint, mandated a dismissal recommendation, not a trial to establish any fact. Straw refused to go to any further hearings given this fact. Straw v. LinkedIn, **Dkts.** 22-12 & 22-13.

R. Straw therefore **did defend himself**. IADC executive director Witte falsely stated outside the Commission that Straw did not defend himself. He knew otherwise and lied about this fact. Straw v. LinkedIn, Dkt. 24 (**page 5**):

> Similar to both the Pierce and James matters, the 2017 case of In re Andrew Straw [FN34] involved a **non-participating respondent**. This case was decided by the less analytical Order of Discipline rather than a full Per Curiam Opinion. [FN35] What is unique about the Straw matter is that the **Respondent voluntarily chose not to participate in his own trial**.

S. The verified complaint was controverted with Straw's affidavit facts and a response under oath. Straw responded to the verified complaint very quickly after investigating, on 2/5/2016 just like he responded immediately in January 2015 to the IADC letter. The affidavit was filed 12 days later, 2/17/2016. No reply was made against those responses except the proposed findings. Straw v. LinkedIn, Dkt. 22-17. IADC addressed Straw's documents in its proposed findings but the hearing officer did not consider any fact in the matter as mitigating. Straw v. LinkedIn, Dkt. 22-18, **pages 19-21**.

T. It is notable that the hearing officer and the IADC both did not mention that **no opposing counsel for defendants** in my 4 cases filed any ethics complaint. In the ABA & Law Schools case, those 51 defendants were represented by some of the top law firms in the United States. **Hundreds of top lawyers from Coast to Coast** were on the other side of these cases but **not one of them** felt compelled under Rule 8.3 to report any ethics violation by Andrew Straw. **None of the 4 federal judges who presided over Straw's cases or any federal Magistrate Judge** filed ==any ethics complaint==. **None of the actual defendants** filed any ethics complaint against Andrew Straw.

U. The only ethics complaint came from ==within the Indiana Supreme Court itself==, its **ADA coordinator** in *response* to *Straw's complaints about her own court, Straw's former employer*.

V. The Disciplinary Commission lawyer, Angie Ordway admitted that she offered Straw ==Disability Status== without any additional sanction. <u>Straw v. LinkedIn</u>, Dkt. 22-15, **paragraph 58**.

W. Ordway also admitted that the federal cases which were the basis for the Rule 3.1 attack on Straw ==did not include any sanction or fine by the federal judges with jurisdiction over them==. <u>Straw v. LinkedIn</u>, Dkt. 22-15, **paragraph 41**.

X. Ordway admitted that she did not consult with *any* of the federal judges before wanting sanctions based on what happened in those 4 courts where *no sanction happened*. <u>Straw v. LinkedIn</u>, Dkt. 22-15, **paragraph 42**. This is known as *bootstrapping*, with ==no solid ground under the disciplinary complaint==.

Y. There was ==no reciprocal sanction== because there was ==no sanction at all on which to base that==. So, the Indiana Supreme Court and its officers attacked Straw's exercise of a First Amendment right to file petitions and complaints in federal courts, even though losing.

Z. The ==16-month delay== between the disciplinary complaint and the verified complaint was admitted. Straw v. LinkedIn, Dkt. 22-15, **paragraph 49**.

AA.    When Straw rejected this, Ordway asked not for a private reprimand but **60 days of suspension** for Straw. This was an escalation for ==not agreeing to Disability Status==. Straw v. LinkedIn, Dkt. 22-17, **page 23**. One could not generate a clearer ADA violation than this, in the record.

BB.    The IADC was so determined not to make admissions that it even denied that all judicial branch employees in the State of Indiana are "connected" to the 5 justices and the chief justice. Straw v. LinkedIn, Dkt. 22-15, **paragraph 77**.

CC.    IADC denied that federal judges are appointed on a partisan basis even though this is basic civics, that the president appoints them. Straw v. LinkedIn, Dkt. 22-15, **paragraph 79**.

DD.    IADC denied that Andrew Straw founded a political party called Disability Party in 2013 even when the FB page for it is easily accessible. Straw v. LinkedIn, Dkt. 22-15, **paragraph 82**. https://www.facebook.com/groups/disabilityparty/about/

EE.    IADC would not admit that deaf people were suing the Indiana Supreme Court and/or its officers for access violations, even

when Straw provided the case citation for one of these in federal court in Indianapolis. <u>Straw v. LinkedIn</u>, Dkt. 22-15, **paragraph 14**.

FF.    Even with Straw providing the URL to the coverage, IADC would not admit that Indiana courts were ranked dead last in disability access in the United States in 2014, 3 months after Loretta H. Rush was appointed Chief Justice. <u>Straw v. LinkedIn</u>, Dkt. 22-15, **paragraph 25**. "Meanwhile, Indiana came in dead last, with Idaho, Missouri, Wyoming and Georgia also filling out the ranking's bottom five." https://www.disabilityscoop.com/2014/11/25/states-ranked-accessibility/19870/

GG.    The hearing officer said in his report that there were aggravating factors but **considered no mitigating fact**. Instead of agreeing to **60 days without automatic reinstatement**, he recommended a **"brief suspension."** <u>Straw v. LinkedIn</u>, **Dkt.** 22-18.

HH.    What began as **no discipline suggested privately** has expanded to the 2/14/2017 ORDER, signed by Chief Justice Loretta H. Rush, imposing BOTH **180 days of suspension** AND that it was **not coupled with automatic reinstatement**. That has left Straw **suspended for over 8 years** in Indiana as of **June 22, 2025**.

II. The rule governing punishments does not include any option for that type of severe suspension. The rule says that either the suspension is for a fixed number of days OR it is indefinite, not both.

JJ.     The ABA in its Rule 10 says that a suspension should not last beyond 3 years. Indiana is now well over 5 years beyond this in Straw's                                                                  case: https://www.americanbar.org/groups/professional_responsibility/resources/lawyer_ethics_regulation/model_rules_for_lawyer_disciplinary_enforcement/rule_10/

KK.     The Curtis Hill suspension for actually being found to commit **sex-based crimes against 4 women** was full of mitigating facts and analysis and he was given 30 days of suspension with automatic reinstatement.  http://curtishill.andrewstraw.com Straw actually was the one who made this successful complaint against the highest ranking lawyer in the State of Indiana, **the Attorney General**.

LL.     Andrew U. D. Straw was accused of no crime, no dishonest act, and no dishonesty whatsoever. He merely brought arguments on disability issues that courts were not willing to entertain. They were not irrational. They involved law school reporting of disability in admissions like gender and race have, Medicare privacy, disabled parent visitation rights, and not making lawyers file federal lawsuits as an ethical matter without the express written agreement of the client and attorney beforehand.

MM.    The Supreme Court, after Straw's objections and when the 180 days expired, refused to act on his submissions unless Straw paid $500 to the Clerk of Court and paid the IADC costs, which were $419.50.

NN.    Straw paid the costs in 2021 from his Biden COVID stimulus check.

OO.    Straw has not worked as a lawyer in Indiana since 2017, severely limiting his ability to raise $500 when he has no extra to save from his SSDI check, which in 2025 is only $1,466, which is below the federal poverty line for his household size of 2.

PP.    https://aspe.hhs.gov/sites/default/files/documents/dd73d4f00d8a819d10b2fdb70d254f7b/detailed-guidelines-2025.pdf

QQ.    Straw lives with a home mental health aide, who is his fiancée also. He lives in a jungle hut made of plywood and bamboo poles, with plastic sheet walls and no roof in the bathroom in Occidental Mindoro, The Philippines.

RR.    The $500 barrier made it very difficult for Straw to overcome his disabilities and reputation and restart his legal career.

SS.    Straw lost his ABA membership over this.



TT.

UU.    Straw lost 4 federal U.S. District Court law licenses to reciprocal suspension, even the Courts that did not impose any sanction or fine in the original 4 cases: INND, INSD, ILND, WIWD

VV.    Straw resigned his WIWD and ILND licenses as a protest.

WW.    The 7th Circuit would not allow Straw to prevail in resigning his INND and INSD licenses, which remain suspended as of 6/22/2025. *Straw v. U.S. District Court*, 18-2192 (7th Cir. 2018)

XX.    When Straw sued the Indiana Supreme Court and various officers involved in this prior to the suspension taking effect, Indiana issued its suspension with the federal lawsuit asking it to be enjoined still open. This was defiance of federal court review of the Indiana discipline.

YY.    The federal court said the suspension was *res judicata*. The other grounds were rejected on appeal. Only *res judicata* was given as a reason to favor Indiana Supreme Court and reject Straw's appeal. 17-1338 at the 7th Circuit.

ZZ.    Straw included James R. Ahler, the hearing officer, in the federal lawsuit and appeal in 2017.

AAA.    While the appeal was pending and already briefed by Straw, the 7th Circuit appointed Ahler to an open federal bankruptcy judge position in Northern District of Indiana, starting on 6/15/2017.

BBB.    Then, about 3 weeks later on 7/6/2017, Straw's 7th Circuit panel imposed the *res judicata* reasoning, which was nonsense law because no court had yet reviewed Indiana's suspension.

CCC.    Indiana's constitution makes the Indiana Supreme Court into a trial court for lawyer discipline but also makes it the prosecutor and in charge of the hearing officer. So, retaliation for an ADA complaint against the Court is wholly within the power of the Indiana Supreme Court. That created a ==conflict of interest== at the Indiana Supreme Court with no way to challenge it, obviously.

DDD.    Ahler's hiring also created a ==direct conflict of interest at the 7th Circuit==.

EEE.    One of Straw's panel members recused AFTER deciding against Straw on 7/6/2017. Then, the two remaining judges simply reaffirmed their earlier denial of Straw's appeal.

FFF.    Judge Posner has explained his approach to judging when he retired. He said he decided who would win and then worked backwards to avoid precedent, even from the U.S. Supreme Court, fully aware he was very unlikely to be reviewed. This lawless judge was one of the other two panel members. https://www.nytimes.com/2017/09/11/us/politics/judge-richard-posner-retirement.html

GGG.    Others were very critical of Posner and publicly: "To some, ==focusing on the desired outcome before consulting the relevant legal authorities== might seem to be the epitome of lawless judging or judicial activism. To Posner, this is simply a "pragmatic" approach to resolving cases." https://www.washingtonpost.com/news/volokh-conspiracy/wp/2017/09/11/richard-posners-exit-interview/

HHH.    This is precisely the problem with American judges. They decide who is favored *a priori* and make sure that side wins. This is simply ==judges acting like partisan hacks==, favoring their side at all costs. In Straw's case, the cost was honesty and a fair outcome without conflict. Straw did not have a fair hearing at the state or federal level, period. With courts hiring parties and disregarding rules to punish a "public figure who works on disability rights issues" like Straw, the only proper description of what happened to Straw is ==COURT CORRUPTION AND CRONYISM==.

III.    Ahler, however, had not only clerked for the panel member judge; he had also clerked for the former chief judge of the 7th Circuit, giving that Court of Appeals reasons to agree with Straw that there was conflict of interest.

JJJ.    Straw's **ethical complaints about this conflict were denied** by the ==7th Circuit's Chief Judge, Diane Wood==, who also happened to be ==the one who announced Ahler's hiring== by her Court. Wood herself had an ethical conflict that prevented her from giving Straw a fair consideration of the conflict allegations.

KKK.    This is like falling down the rabbit hole in Alice in Wonderland, with Red Queens like Wood and Rush screaming "off with his head." Rush and Wood are good friends and it is easy to find pictures of them together.



LLL.



MMM.

Rush is on far left, Wood on far right. The U.S. District Judge who denied Straw's ADA suit against Rush and the Indiana Supreme Court stands immediately to the left of Wood.

NNN.    Rush is great friends with Ahler as well.



OOO.

PPP.    Rush is great friends with the complainant, Brenda F. Rodeheffer. Rush promoted her to a very senior position on court personnel, less than 1 year after Straw's suspension: https://www.in.gov/courts/supreme/files/soj-2018.pdf

QQQ.    The clear pattern is that ==anyone who takes a swing at Andrew U. D. Straw is guaranteed advancement==. They will not be punished for their ADA violations or the ethics violations from this under ==Rule 8.4(g)==, which **prohibits harming disabled people as a lawyer**.

RRR.    Even ==Rush was favored== after taking swings at Andrew U. D. Straw and hitting him hard. The Chief Justice of the United States favors Rush and has appointed her to leadership roles in the United States,                as                have                others.

Chief Justice Rush is the Immediate Past-==President== of the ==Conference of Chief Justices== and a member of the ==National==

Center for State Courts Board of Directors. She also served as co-chair of the National Judicial Opioid Task Force and as an executive committee member on the National Judicial Task Force to Examine State Courts' Response to Mental Illness. In 2019, she was appointed by Chief Justice John Roberts to the Judicial Conference Committee on Federal-State Jurisdiction and continues to serve in that role. And Chief Justice Rush was recently elected as a member of the American Law Institute. In addition to being a member of local, state, and national bar associations, Chief Justice Rush is a Life Fellow of the American Bar Foundation and an Academy of Law Alumni Fellow for the Maurer School of Law. She is a member of the Indiana Girl Advisory Council. She also chairs or is a member of several commissions, including the Indiana Judicial Conference Board of Directors and the Indiana Judicial Nominating/Qualifications Commission.

https://www.in.gov/courts/supreme/justices/loretta-rush/

SSS.    Loretta H. Rush is embedded in every level of judicial leadership in the United States. When she wishes to discriminate, nobody is going to stop her. She has biases against mental illness because a schizophrenic client of hers tried to kill her husband. Rush acts on that bias without recusing and nobody cares. Andrew U. D. Straw has that diagnosis, though without any criminal record whatsoever. *See, infra.*

TTT.    In 2023, Rush was awarded the Lady Justice Award by the National Association of Women Judges. https://www.in.gov/courts/supreme/files/2023-nawj-award-pr.pdf

UUU.   Straw has explained these structural ethical problems to the U.S. Supreme Court, the conflicts and the discrimination, but the U.S. Supreme Court would not grant certiorari. 17-8005

https://www.supremecourt.gov/DocketPDF/17/17-8005/37965/20180307105844473_00000007.pdf

VVV.    Instead of trying to defend all of this conflict, the Indiana Supreme Court refused, saying it waived the right to respond. https://www.supremecourt.gov/DocketPDF/17/17-8005/42075/20180403125725368_SCOUT%20Waiver%2017-8005.pdf

WWW.    Thus, Straw's allegations under oath remain ==uncontroverted at the U.S. Supreme Court==. The facts alleged must be considered true.

XXX.    The U.S. Supreme Court refused direct review of the Indiana suspension:

Straw v. Indiana Supreme Court, 16-1346 (U.S. Sup. Ct.) (137 S. Ct. 2309, 198 L. Ed. 2d 728)

https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/16-1346.html

YYY.    Straw's ==SCOTUS petition==:

https://drive.google.com/file/d/0B7fESKZS9PWmTS0wSG8yd2t6UnM/view?resourcekey=0-w-Ij0rzROQOh34yvcdK51Q

ZZZ.    The U.S. Supreme Court refused appellate review of the 7th Circuit panel decision:

Straw v. Indiana Supreme Court, et. al., 17-6812 (1/8/2018) (138 S. Ct. 699, 199 L. Ed. 2d 574)

https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/17-6812.html

AAAA.  Straw's ==SCOTUS petition==:

https://drive.google.com/file/d/1C60GvYkYblhwE4s0DVQv-3HFSQFQrvWM/view?usp=sharing

BBBB.  Indiana Supreme Court waived response to the petition.

http://www.supremecourt.gov/DocketPDF/17/17-6812/23186/20171208135624501_Straw%20Scotus%20Waiver.pdf

CCCC.  Straw has been dealing with the consequences of a false suspension for years, fighting others who repeat it. The dishonest manner in which federal courts allow the injuries without recourse led Straw to say the ==Chief Justice of the United States needs to have a reform agenda that currently does not exist==.

DDDD.  Straw's ==Chief    Justice    principles==    are    here:

http://chief.andrewstraw.com

EEEE.  Instead of helping Straw against Loretta H Rush, the Chief Justice of the United States has been ***appointing*** Rush to many different leadership roles.

FFFF.    Rush has demonstrated her hostility to the public and the Bill of Rights when she convinced the other Indiana justices to err with her on application of the 8th Amendment (excessive fines) in Timbs v. Indiana, 586 U.S. 146 (2019). Her **5-0 Indiana Supreme Court opinion** was rejected 9-0 by the U.S. Supreme Court.

GGGG.  Straw has never been rejected by the U.S. Supreme Court, which never even gave Straw the opportunity ***to be*** rejected because a refusal to grant certiorari is not a merits decision.

HHHH. "a refusal of certiorari by this Court may carry no weight on the merits * * * " <u>Darr v. Burford</u>, 339 U.S. 200 (1950)

IIII.    One law firm analysis of U.S. Supreme Court certiorari decisions said this very peculiar thing:

> The major peculiarity of petitioning for certiorari is that <mark>the merits of a case are not the main thing</mark>. They are not a reliable indicator of whether the Court will grant the writ. True, in the cases it hears, the Court often determines that the judgment below was incorrect. The Court reversed or vacated (at least in part) 57 (68 percent) of the 84 cases reviewed on writ of certiorari and decided with a full opinion during the 1995 term. "The Supreme Court, 1995 Term," 110 Harv. L. Rev. 372 (1996). But, at the petition stage, there is <mark>no straightforward relationship between the merits and whatever review will be granted</mark>. The reason for this — and it is an awkward concept for many lawyers — is that **the Supreme Court does not regard its principal job to be the correction            of                    errors**.

> https://www.mayerbrown.com/en/insights/publications/1999/01/opposing-certiorari-in-the-us-supreme-court

JJJJ.    I have been denied certiorari 13x and the Supreme Court <mark>without any explanation</mark> took away the right to do so *in forma pauperis* in the last one.

KKKK. Straw is against the Republicans who completely control the state and federal courts and the conservative Democrat judges who side with the Republicans almost all the time. <mark>Straw opposes the cramped views of these judges and justices on disability rights enforcement and the constitutional enforcement more generally.</mark>

LLLL.    Straw is left with his former employer that he alleges discriminated against him in his employment and bar admission and afterwards and in his law career being in charge of whether he can make ==ADA complaints without retaliation==. Indiana's constitution made ==lawyer licenses *at will*== for the Indiana Supreme Court if no higher court will with honesty and due process and no conflicts allow Straw to challenge what happened to him.

MMMM.      The Indiana Supreme Court by the state constitution acts as ==a complainant==, ==the prosecutor==, ==the fact finder==, and ultimately ==the judge== of every lawyer's ADA complaints.

NNNN. On top of this, the Indiana Supreme Court bans all disabled people from being lawyers and Straw is subject to this, though it has not yet been officially invoked by the Supreme Court, only Rule 3.1                                                                has.

http://ban.andrewstraw.com

OOOO. But the ADA coordinator surely invoked the ban when she said in the first sentences of her complaint that Straw's mental illness makes him incompetent as a lawyer. Straw v. LinkedIn, **Dkt. 22-6**.

PPPP.    At no point in all of this did Indiana admit that Straw is a ==**"public figure who works on disability rights issues"**== even though the Illinois Court of Appeals ==adjudicated Straw to be such== in 2015, with Indiana's disciplinary complaint unactioned at the time. And a year PRIOR to the verified complaint, which also did not recognize Straw's civil rights leader and public advocate roles.

https://www.illinoiscourts.gov/Resources/64fcb39e-0c9a-4941-bf18-df6491c857f3/1143094_R23.pdf

QQQQ. Despite a state court of appeals saying that Straw was a "public figure who works on disability rights issues, " Angie Ordway for the IADC refused to admit that Straw was a civil rights leader for disabled people. Straw v. LinkedIn, **Dkts.** 22-14 & 22-15 (¶¶ 5, 24)

RRRR. These things all lean toward the reasonable view that disabled lawyers are disfavored in Indiana. Straw is disfavored. Disability civil rights arguments cannot be made without coming under the scrutiny of a jaundiced eye from a state supreme court that Straw says discriminates based on disability.

SSSS.    Luckily, the Virginia State Bar saw through this thin veil and refused to punish Andrew U. D. Straw for losing some cases in federal court without sanctions and Indiana going ballistic over it. The VSB's 5-judge panel called the Indiana suspension of Straw, "having all the grace and charm of a drive-by shooting." Straw v. LinkedIn,                    **Dkt.**                    22-21:

https://www.courtlistener.com/docket/66619947/22/21/straw-v-linkedin-corp/

TTTT.   Moreover, while U.S. District Courts in the Midwest trotted along behind Loretta H. Rush and suspended Straw without any good reason to do so and NO HEARING.

UUUU. The Fourth Circuit U.S. Court of Appeals has left Straw **ACTIVE IN GOOD STANDING** from **1999 to 2025**:

https://www.ca4.uscourts.gov/AttorneyBarAndECFStatus/rptN0046ActiveAttorneyss.pdf

VVVV.  ==All of these things are mitigating in nature.== The very method of conducting the process is fatally flawed as a due process matter. A trial court that has power over property must be reviewable so a Taking cannot happen without compensation. But that is not how it works in Indiana. ==Indiana Supreme Court can take law licenses at will== even when ==no crime or dishonest act is even alleged== against a lawyer, just strong disagreement by a disabled attorney with several federal judges who are not disabled.

WWWW.    Finally, Straw has raised the Chief Justice of Indiana's actual bias against people who have schizophrenia, for a very good reason. A former client of hers broke into her house and attempted to kill her husband via choking. He defended himself with an ==insanity defense by raising his schizophrenia==. Swaynie v. Indiana State Prison Superintendent, 3:2008cv00122 (N.D. Ind. 2010) (**Dkt. 19**):

https://law.justia.com/cases/federal/district-courts/indiana/inndce/3:2008cv00122/53773/19/

XXXX.  Rush cannot deny that a person with schizophrenia has such a terrible connection with her that a reasonable person would find that she is biased against the very small percentage of people who have schizophrenia. This is unavoidable. Instead of imposing sanctions on Straw, she should have politely stepped aside and not participated                in                any                way.

YYYY.   In fact, ==Rush supervised the person who made the complaint and the IADC in accepting it and choosing to prosecute it==. Then she ==appointed the hearing officer==. Then ==she imposed sanctions== on a ==schizophrenic former senior employee of her office==, Chief Justice of Indiana, a former employee who became ==physically disabled driving to her court to work==.

ZZZZ.    Rush is too close to this and too biased.

AAAAA.    Rush is involved in the matter and biased against schizophrenia. Rush was not neutral at any time, from ==9/3/2014== when her ADA coordinator attacked Straw to ==6/22/2025==, with **Straw still suspended in his law license** that he EARNED ==while working for the former Chief Justice of Indiana==, Randall T. Shepard.

BBBBB.    Indiana Supreme Court has been aware of Straw's schizophrenia since 2001, when Straw revealed it on his Indiana bar application form and a doctor confirmed it for the Court. Straw v. LinkedIn, **Dkt. 22-21**: Straw v. LinkedIn, **Dkts.** 22-36 & 22-37.

Straw catalogued his resistance and insistence that there were ==no aggravating factors== and ==only mitigating ones==, the opposite of what the hearing officer said. Straw v. LinkedIn, Dkts. 22-18 & 22-19. The hearing officer said he would consider aggravating and mitigating factors but ==completely omitted mitigating factors==. Another due process and fairness violation.

http://all.andrewstraw.com

http://dueprocess.andrewstraw.com

## FURTHER EXPLANATIONS

Here find critical facts regarding the crimes and dishonesty of the hearing officer and others chosen by the Chief Justice of Indiana to inflict false discipline on me that has lasted **80+ months** and destroyed my law career permanently.  In re Straw, 68 N.E.3d 1070 (Ind. 2/14/2017)

NB: http://crime.andrewstraw.com

**FACT 1.**  Loretta Rush appointed James R. Ahler as hearing officer in my discipline case after I accused her court of ADA violations.

**FACT 2.**  Ahler was seeking to fill a vacancy on the Indiana Supreme Court when Rush appointed him as hearing officer.  This appears to be a potential inducement to get Ahler to come to the predetermined conclusions found in Ahler's false and misleading hearing officer report months past the deadline in the Rules.

**FACT 3.**  ==MITIGATING FACTS==.  Ahler implied at pages 19-21 of his report that there were no mitigating factors.  The heading was "AGGRAVATORS & MITIGATORS."  No so-called mitigators were presented, only exaggerations of aggravating factors.  He failed to mention that the Disciplinary Commission offered me a "disability status" instead of discipline. He knew this.  He also failed to mention my lengthy affidavit and answers under protest and a lengthy rebuttal of the verified complaint in my own affidavit.  He also failed to mention that I had **no prior disciplinary action or sanction**.  He also failed to mention that I am a former employee of the Court, hired by the former Chief Justice of Indiana and I was fired after severe injuries (broken bones in my legs, pelvis, hand, nose, and skull) on the way to the Court to work. He failed to mention that I made ADA complaints in 2014 and the ADA coordinator started the disciplinary process days later as an act of retaliation (even mentioning my ADA complaint after saying my mental disability made me incompetent).  Ahler failed to mention that my law license was under attack for the exact same reasons given in a consent

[agreement](#) when I was working for the Supreme Court and passed the bar exam while still in much pain from the car accident.  He failed to mention that I was accused of **no crime, no dishonest act**, and the only rule used against me was the rule for **"incompetence,"** Rule 3.1.  He failed to honestly explain why **no mitigating fact was mentioned at all** when the case was full of them and HE KNEW IT.

## MITIGATING FACTORS

Many courts have generally recognized the following mitigating factors when fashioning a sanction.  Andrew Straw's case contained facts supporting almost all of these being considered.

- ✓ absence of a prior disciplinary record; **TRUE #1**

- ✓ absence of a dishonest or selfish motive; **TRUE #2**

- ✓ personal or emotional problems; **TRUE #3**

- ✓ timely good faith efforts to make restitution or to rectify consequences of misconduct; (2 cases were settled by insurance without sanction; one was not labeled frivolous by the court, and another involved violating my health privacy)  **TRUE #4**

- ✓ full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (answers/affidavit, but refusal to submit to hearing officer who sought a supreme court vacancy and was hired as a federal judge while my appellee)  **TRUE #5**

- ✓ inexperience in the practice of law; **TRUE #6**

- ✓ character or reputation; (disability rights leader) **TRUE #7**

- ✓ physical disability (from Indiana Supreme Court)  **TRUE #8**

- ✓ mental disability or impairment; (USMC poisoning)  **TRUE #9**

✔️ delay in disciplinary proceedings; (29 months after the Court's ADA coordinator retaliated on 9/3/2014 against my ADA complaints with this disciplinary complaint) **TRUE #10**

✔️ imposition of other penalties or sanctions; (no other court chose to sanction me and VSB rejected the Indiana suspension 100%, saying I did not violate any ethical rule) **TRUE #11**

❌ remorse; (sorry, but advocating for greater disability protections when I am both physically and mentally disabled is never going to be something I have remorse about)

✔️ remoteness of prior rules violations; (NONE) **TRUE #12**

✔️ the unlikelihood of repetition of the misconduct. (I cannot repeat filing my first 4 cases) **TRUE #13**

✔️ the fact that all of these mitigating factors existed but the Disciplinary Commission, hearing officer, and Chief Justice failed to mention any of them is yet another mitigator. **TRUE #14**

✔️ the investigation lasted from 9/3/2014 (disciplinary complaint date) through 1/11/2016 (verified complaint filed), 16 months. However, the Indiana disciplinary rules limit an investigation to 12 months, so ==the investigation exceeded the rule by 4 months==. Similarly, the hearing officer in 2016 was to enter his report within 60 days of the parties requesting findings and ORDERs, but the hearing officer waited until **months past** this 60-day deadline. Thus, both the investigation and the report were **months late** and this discipline should have been dismissed under *laches* doctrine since the Disciplinary Commission and Hearing Officer failed to timely perform their duties. **TRUE #15**

✔️ the Chief Justice is biased against people like me with mental illness because a mentally ill man tried to kill her husband. Rush should have recused but the other justices allowed her. **TRUE #16**

**FACT 4.** When Ahler submitted his false and misleading hearing report in December 2016, it is clear that he was <u>seeking another office, federal bankruptcy judge to be hired by the 7th Circuit</u>. When I sued Ahler, he did not reveal his application to work for the 7th Circuit as a judge. This was extremely sneaky and dishonest and for his own benefit. He also failed to reveal publicly in my ADA case that the trial judge, Hon. Magnus-Stinson was part of the 7th Circuit body deciding who would be chosen                for                that                bankruptcy                job.

**FACT 5.** Ahler was my appellee before a panel of the 7th Circuit. He did not reveal publicly that one of the panel members employed Ahler as a clerk. He also did not reveal publicly that he was clerk for the former chief judge of the 7th Circuit. He did not reveal publicly that he likely knows every member of the 7th Circuit on a personal basis after working in those clerk roles. He remained silent while being represented by the office of the groper, Curtis Hill. <u>In re Hill</u>, <u>19S-DI-56</u> (Ind. 2020).

**FACT 6.** With my ADA appeal pending at the 7th Circuit, Ahler was hired to be a federal judge by the 7th Circuit and then all of my appellees were protected with *res judicata* law that was nonsensical because the facts under review did not take place **until my case was filed**. Also, I had never sued Ahler before, so it was impossible for *res judicata* to be used to protect him and his ADA-violating dishonest report. <u>Straw v. Indiana Supreme Court, et. al.</u>, 17-1338, 692 F. App'x 291 (7th Cir. 7/6/2017) (**Dkts. 79 & 80**). The 7th Circuit has been acting dishonestly to protect Ahler ever since his hiring. <u>http://ca7.andrewstraw.com</u> That court dishonestly states that my cases are frivolous when they are not and the whole point is to discredit me as a witness to the <mark>crimes of the 7th Circuit bench in hiring                Ahler,                my                appellee</mark>.

**FACT 6.** My right to property compensation under the takings clause in the Indiana Bill of Rights, Sec. 21, was denied because my labor was not conscripted and the Supreme Court did not use my license, only destroying it. <u>Straw v. Indiana</u>, 22A-PL-766 (Ind. Ct. App. 6/22/2022).

## CRIMES

It appears that Ahler was seeking a position worth millions of dollars on the Indiana Supreme Court in return for falsely representing my case so that I would be disciplined in response for my own ADA complaints about the Indiana Supreme Court.  This is why no mitigating facts appear when even Curtis Hill had mitigating analysis.  Ahler knew that these cases normally consider mitigating factors and the evidence is that his analysis' title in his report included aggravators and mitigators.  He then sought another position at the 7th Circuit when he was my appellee there.  These actions corrupted the Indiana Supreme Court and the 7th Circuit and Judge Magnus-Stinson, **all for Ahler's benefit**.  His being hired made ADA review impossible because the federal courts were angry and inflicting injury on me in the form of false accusations of "frivolous" to harm me as a witness.  Ahler's salary was a misuse of federal funds.

## DOCUMENTS & CRIMES

- (**RODEHEFFER**) DISCIPLINARY COMPLAINT IN RETALIATION AGAINST ADA COMPLAINTS

- (**WITTE**) VERIFIED COMPLAINT WITH NO MITIGATING FACTORS

- (**ORDWAY**) DISCIPLINARY COMMISSION COUNSEL PROPOSED FINDINGS, NO MITIGATING FACTORS

- (**ORDWAY**) COMMISSION COUNSEL RESISTANCE TO ADMISSIONS AND INTERROGATORY ANSWERS TO RESIST ESTABLISHING MITIGATING FACTORS

- (**AHLER**) HEARING OFFICER REPORT WITH NO MITIGATING FACTORS

- (**RUSH**) SANCTION ORDER WITH NO MITIGATING FACTORS

- (**STRAW**) FRAP RULE 28(j) LETTERS TO 9th CIRCUIT AND FEDERAL CIRCUIT ON THE CRIMINAL OMISSIONS TO MISLEAD THE INDIANA SUPREME COURT.

- (**VSB**) VIRGINIA STATE BAR SAID NO TO THE INDIANA SUPREME COURT AND IMPOSED NO DISCIPLINE

## STATE OF INDIANA CRIMES

IC § 35-44.1-2-1 – false representation of my disciplinary facts is perjury.

IC § 35-44.1-2-2(a)(4) – Ahler's false and misleading statements were meant to mislead the Indiana Supreme Court and cause me injury. They have done this to an extreme degree. A suspension lasting **80+ months** for a supposed Rule 3.1 violation is illegitimate on its face when all mitigating factors were omitted from the hearing officer report and the final ORDER of the Indiana Supreme Court. It is absolutely critical to note that not a single crime was alleged and not a single dishonest act on my part, yet I have been suspended precisely for complaining about the ADA violations of the Indiana Supreme Court. Note that IC § 35-44.1-2-2(e) does not protect a judge committing these crimes.

IC § 35-44.1-2-4 – concerns misleading a public servant and Ahler did mislead the Indiana Supreme Court, which then caused that Court to make an ORDER which was used to mislead many other courts and public officers.

IC § 35-40-5-1 – my rights as a crime victim from the actions of Ahler were violated.

IC § 35-45-2-1(d)(1), (d)(4-7) – the discipline and hearing report were **retaliation** for my lawful acts in my 2014 ADA complaint about the Court. The U.S. Supreme Court made the right to sue state courts for their ADA violations perfectly clear in 2004. Tennessee v. Lane, 541 U.S. 509 (2004).

IC § 35-45-2-2 – Ahler's actions served to harass me and prevent me from using the Courts, which is a constitutional right under both the Indiana

Bill of Rights and the U.S. Bill of Rights.  The discipline based on his false hearing officer report  served to prevent me from being a disability lawyer in the Midwest permanently.  This damaged not just me but also any disabled clients I may have helped in the past 80+ months as well as disability advocacy for wide implementation of the ADA, which Congress explicitly directs to be done.  I am disabled.  The ADA only requires me as a minimum for a lawsuit to "allege discrimination." 42 U.S.C. § 12133. I did this every single time but was accused of doing something frivolous when I followed the Act to the letter.

**IC § 35-44.2-1-1** – as a former employee of the Court who reported ADA violations, I was afflicted with retaliation for reporting a violation of law.

## FEDERAL CRIMES

Every federal judge who used the term frivolous abusively with knowledge proven in the ORDER that I have been abused with this term by the 7th Circuit and other courts has acted as an accomplice to the 7th Circuit and its illegal hiring of Ahler.  Calling my filings frivolous was done to attack my credibility without actually showing that my filings are frivolous in any objective sense.  These are acts of retaliation done to cover up federal crimes based on hiring my appellee, James R. Ahler and making him a federal judge and millionaire over 14 years while favoring him unfairly and falsely in my appeal.  These violations have been used to deprive me of a federal court office, namely attorney admitted before a U.S. District Court, 4x, and used to prevent me from having another at the 11th Circuit.  This office is a court officer office.

Potential federal crimes given the injury to my brain include:  **18 U.S.C. §§ 3, 4, 201, 210, 211, 241, 242, 245, 249, 372, 1001, 1341, 1343, 1349, 1361, 1503, 1512, 1513, 1621, 1622, 1951, 1962, 2071, 2076.**

## PROPERTY TAKINGS AND COMPENSATION

After taking my property under these conditions, causing 4 other courts to reciprocally injure me, I cannot practice law anymore.  I must be compensated, as I said in <u>Straw v. U.S.</u>, 21-1597, 21-1598 (Fed. Cir.

10/13/2021) & <u>Straw v. U.S.</u>, 21-5300 (D.C. Cir. 2022), but I was denied. The Indiana Court of Appeals has full authority to compensate me under Indiana Bill of Rights, Section 21, and cannot avoid or escape this obligation, but it denied me anyway.  <u>Straw v. Indiana</u>, 22A-PL-766 (Ind. Ct. App. 6/22/2022); <u>Straw v. Indiana</u>, 23A-PL-775 (Ind. 8/15/2023).  I must be paid for the property taken, especially since I committed no crime or dishonest act.  Frivolous is not enough for a suspension and certainly not 80+ months when attorneys and judges who <u>commit crimes</u> do not get that level of suspension because their **mitigating factors don't allow it**.  I support **4 fatherless children** now and I must be paid or they suffer. Ex. 22:22. I lost 5 law licenses in the Midwest, my Virginia license due to my poverty and reputation damage from Indiana, and the 11th Circuit denied me a license because of Indiana's suspension. That's 7 law licenses. I was RUINED by my former employers at the Indiana Supreme Court.

## MITIGATING SACRIFICES: INDIANA COURTS & USMC

These sacrifices were so severe on the way to the Indiana Supreme Court to work, if it happened in a military context, it would merit a **<u>purple heart</u>**.  The very idea of attacking disability advocacy of someone who made such sacrifices to the Indiana courts is absolutely outrageous and nonsense to the core.  Attacking someone who made such sacrifices in public service is not just unethical or criminal, it is **<u>evil</u>** in the sense of being derived from a **<u>demonic influence</u>**.



X-ray of Andrew Straw's broken femur and pelvis



MRI showing 2001 damage to Andrew Straw's femur and pelvis



X-ray of Andrew Straw's other leg, 2001



2016 X-ray of the same leg, showing hardware remains

**OTHER BROKEN BONES.**  Other broken bones in that same 2/22/2001 accident on the way to the Indiana Supreme Court to work include broken hand, broken ribs, broken nose, and skull broken behind the nose.

I was born at Camp LeJeune, NC, and received the bipolar disorder and other disabilities that have haunted me my entire life, with discrimination by the Indiana Supreme Court as soon as they found out I have this.  38 C.F.R. §§ 17.400(b)(iii & xiv)

Straw v. Wilkie, 20-2090, 843 F. App'x 263 (Fed. Cir. 2021) (**HEALTH CARE REFUSED**)

Straw v. United States, 16-17573-GG (11th Cir. 5/22/2019) (**COMPENSATION REFUSED**)



I WAS BETRAYED BY THE UNITED STATES MARINE CORPS, CONGRESS, AND EVERY PERSON WHO DISCRIMINATES BASED ON THE DISABILITIES FROM THAT POISONING. THIS INCLUDES THE            INDIANA            SUPREME            COURT.

CALLING    MY    CASES    AND    FILINGS    ==FRIVOLOUS==    IS DISCRIMINATION EVERY SINGLE TIME IT HAPPENS. CALLING CASE FRIVOLOUS WHEN IT IS NOT IS A COMMON NEFARIOUS COURT METHOD OF DISCREDITING AND INJURING A PERSON WHO          DOES          NOT          DESERVE          IT.

CONGRESS KNOWS REFUSING JUSTICE TO THESE POISONED U.S. MARINE CORPS FAMILIES IS NOT GOING TO BE THE FINAL WORD. CAMP LEJEUNE JUSTICE ACT OF 2022 IS NOW LAW.

- <u>Straw    v.    United    States</u>,    7:23-cv-162-BO-BM    (E.D.N.C.)

BEING BORN ON AN EPA SUPERFUND SITE TOXIC WASTE DUMP WITHOUT MY CONSENT IS A MITIGATING FACTOR. JUDGES SHOULD LEAN MY WAY AND LISTEN AFTER THIS LIFE-LONG SACRIFICE. ==NO MORE SAYING NO JUST BECAUSE YOU CAN==.

U.S. MARINE CORPS' ==KILLING MY MOTHER== WHILE I WAS IN LAW SCHOOL WITH A VA-LISTED **BREAST CANCER** FROM CAMP LEJEUNE IS ANOTHER MITIGATING FACTOR. HER FEMALE BREAST CANCER IS ON THE CLJA PLAINTIFF WEBSITE FAQ:

- https://camplejeunecourtinfo.com/faq/

MY NATIONAL AND INTERNATIONAL **DISABILITY RIGHTS LEADERSHIP** IS A MITIGATING FACTOR IN DISABILITY CASES.

MY FOUNDING **"DISABILTY PARTY"** IN 2013 IS A MITIGATING FACTOR.    ATTACKING    ME    WAS    A    <mark>POLITICAL ACT</mark>. MY FOUNDING THE 527 GROUP **"CHILDREN OF CAMP LEJEUNE"** IS  A  MITIGATING  FACTOR  AND  WAS  A  <mark>POLITICAL ACT</mark>.

I AM A 9/11 NYC TOXIC DUST EXPOSURE VICTIM WITH A DECADE OF RESPIRATORY AND ENT SYMPTOMS AND SUFFERING.

- [www.vcf.gov](www.vcf.gov)                    Claim#                    0260945.

## COURT & LEGAL SYSTEM

### U.S. COURT OF APPEALS, SECOND CIRCUIT

- dismissed my case for defamation and ADA violations for not filing a form that I in fact filed and that was in the record.
- Refused me the ability to have the dismissal by the clerk reviewed by *actual judges*.  Straw v. Unknown, 22-5172 (D.C. Cir.)

### U.S. COURT OF APPEALS, SEVENTH CIRCUIT

- Allowed perjury in a motion for more time.  Straw v. Indiana, 18-2878 (7th Cir. 2018)
- Hired my appellee to be a federal judge.  Straw v. Indiana Supreme Court, et. al., 17-1338, 692 F. App'x 291 (7th Cir. 2017) (**Dkts. 79 & 80**)
- Banned me from the federal courts for objecting to these *crimes*.

### U.S. COURT OF APPEALS, ELEVENTH CIRCUIT

- Refused me a law license because of the Indiana suspension.
- Straw v. United States, 16-17573-GG (11th Cir. 2019)

## U.S. SUPREME COURT

- Denied me certiorari 13x on constitutional violations, ADA violations, the crimes committed to deprive me of 5 law licenses, the failure to provide real hearings, etc. Certiorari system clearly violates Article III, as well as the First and Fifth Amendments.  Straw v. U.S., 23-16039 (9th Cir.)
- Straw v. Judges Act of 1925, 22-5129 (D.C. Cir.).

## UTAH SUPREME COURT

- Denied me the right to file an amicus brief to oppose nonsense law like imposing a reciprocal state law license suspension on a non-lawyer, amounting to a due process violation.
- Straw v. Utah, 2:22-cv-00023-RJS (D.UT 2023)
- Straw v. Utah, 23-4036 (10th Cir.)

## DISTRICT OF COLUMBIA

Straw v. Frivolous, 22-7068 (D.C. Cir.)

Straw v. United States, 22-5106 (D.C. Cir.) (Camp Pendleton poison)

## INDIANA COURTS

Straw v. Indiana, 22A-PL-766 (Ind. Ct. App. 2022) (Law license takings)

Straw v. Indiana, 23A-PL-775 (Ind. Ct. App. 2023) (Law license takings)

Straw v. Indiana, 22A-EX-679 (Ind. Ct. App.) (2 WC claims from Indiana Supreme Court employment).

Disability discrimination.  http://petition2014.andrewstraw.com

## AVVO, INC. (WITH ASSISTANCE OF WESTERN DISTRICT OF WASHINGTON)

- **Lied** about my Virginia license, saying it was not active for 3 years when it was active.  Propagated the Indiana suspension.
- **Lied** in 9th Circuit briefing about the owners of AVVO.
- Opposing counsel **hired the law clerk of the trial judge** into its litigation group.
- Avvo provides profiles for nearly every U.S. lawyer.
- Straw v. Avvo, 20-35971, 21-35848 (9th Cir. 2021) (*En Banc* Review **DENIED**)